UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LUIS EDUARDO BUENOS RUIZ,

     Petitioner,        MEMORANDUM & ORDER
                    06 CV 0301 (NGG)

 v.

BRIAN FISCHER, Superintendent of
Sing Sing Correctional Facility,

     Respondent.
--------------------------------------------------------X
GARAUFIS, United States District Judge.

  Petitioner Luis Eduardo Buenos Ruiz ("Buenos Ruiz" or "Petitioner") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights, and seeking to overturn his October 15, 2002 conviction for Manslaughter in the First Degree (New York Penal Law ("Penal Law") § 125.25(1)), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(2)). For the reasons set forth below, the petition is DENIED.

**I. Background**

  At about 1:00 a.m. on January 14, 2001, Petitioner was driving a blue Jeep, and collided with Joseph Coll's parked car in front of Coll's apartment on Weirfield Street in Brooklyn. (Trial transcript ("Tr.") at 174-75.) After an argument, during which Petitioner punched Coll in the face, Coll's relatives came to his aid. (Id. at 64, 79, 91, 114-19, 121-23, 179.) Petitioner left the scene, ran up the street, and returned a few minutes later with a man wearing white clothes. (Id. at 67, 70, 95, 119, 127-29, 185-86, 229, 232-33.) Petitioner displayed a gun in his waistband to the people assembled in the street. (Id. at 96, 187, 233, 253-54.) He then moved closer to

1

Coll, and fired one shot from thirty-five feet away, hitting Coll in the chest and killing him. (Id. at 71-74, 85, 97-99,130-31, 144-45, 187-88, 190, 230, 233-34, 237, 249, 255, 271-73.) At trial, over objection, Detective Marcos Martinez ("Detective Martinez") testified that he recovered the blue Jeep, ran a license plate check on the vehicle, and learned that it was registered in Newark, New Jersey. (Id. at 282-83.) He went to the address, had a conversation with Eric Balenzuela ("Balenzuela"), and obtained a photograph of Petitioner from him. (Id.)

Following a jury trial, Petitioner was convicted as noted above. The jury acquitted Petitioner of two counts of Murder in the Second Degree (Penal Law §§ 125.25(1), (2)). He was sentenced to a prison term of fifteen years for first-degree manslaughter, and three and one-half years for second-degree possession of a weapon, to be served consecutively.

Petitioner was appointed appellate counsel, who filed a brief on Petitioner's behalf alleging that: 1) he was denied his right of confrontation by the admission of evidence that a non-testifying witness had inferentially implicated him in the shooting; 2) his right to due process was violated by comments made by the prosecutor in summation; and 3) the imposition of consecutive sentences was illegal. (See Brief for Defendant-Appellant ("Pet. Br."))

In a decision dated October 24, 2004, the Appellate Division, Second Department, unanimously affirmed petitioner's conviction, holding that the Confrontation Clause was not violated because the evidence was admitted "for the purpose of explaining the sequence of events leading to the defendant's apprehension." People v. Buenos Ruiz, 784 N.Y.S.2d 558 (2d Dept. 2004). Additionally, the court found that the sentence was neither illegal nor excessive. Id. Petitioner sought leave to appeal this decision to the Court of Appeals, which was denied on December 29, 2004. People v. Buenos Ruiz, 4 N.Y.3d 747 (2004).

In pro se papers dated December 27, 2005, Petitioner filed the instant petition for a writ of habeas corpus, alleging the same claims he advanced on appeal to the Second Department. On April 14, 2006, the Government filed its opposition.

## II. Discussion

Pursuant to 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must first demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

In addition, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in a state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision

3

will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) ("When applying § 2254(d)'s 'unreasonable application' clause to silent state-court opinions, we review outcomes, not reasoning.") (citing Sellan, 261 F.3d at 311-12), cert. denied, 127 S. Ct. 976 (2007); Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 126 S. Ct. 215 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct" and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Id. at 405-06. Williams also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

4

### A. Testimony of Detective Martinez

Petitioner first argues that Detective Martinez's testimony constituted improper hearsay which implicated Petitioner, thereby denying him his due process and confrontation rights. (Petition for a Writ of Habeas Corpus ("Petition") ¶ 9.) As the Government concedes, Petitioner's claim was procedurally exhausted because it was raised on direct appeal and the Appellate Division reviewed this claim on the merits. (Declaration of Victor Barall ("Barall Decl.") at 18-19.)

Detective Martinez testified that he recovered a car in connection with the case, traced the license plate number to a residence in New Jersey, went to that location where he spoke with Balenzuela and, in the course of that conversation, obtained a photograph of Petitioner. (Tr. at 282-83.) He then testified that the investigation of the case continued until Petitioner was apprehended on a later date in Costa Rica. (Id. at 284-85.) Petitioner contends that that testimony inferentially implied that Balenzuela had implicated Petitioner in the crime. (Petition ¶9.)

Upon review, the Appellate Division determined that this testimony was not admitted for the truth of the matter asserted, but rather "for the purpose of explaining the sequence of events lead to the defendant's apprehension." Buenos Ruiz, 784 N.Y.S.2d at 559 . I find that determination to have been reasonable.

In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court held that the admission of hearsay statements was not violative of the Confrontation Clause so long as the statements "fall[] within a firmly rooted hearsay exception" or contain "particularized guarantees of trustworthiness." Id. at 66. In Crawford v. Washington, 541 U.S. 36 (2005), the Supreme Court

5

held that the Sixth Amendment's Confrontation Clause bars -- without regard to reliability -- the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." Id. at 53-54. In Davis v. Washington, 126 S. Ct. 2266 (2006), the Supreme Court held that the bar on testimonial hearsay is "so clearly reflected in the text" of the Confrontation Clause that it "must . . . mark out not merely its 'core,' but its perimeter." Id. at 2274. Based on the decision in Davis, the Second Circuit has made clear that the "reliability analysis" required in Ohio v. Roberts -- that is, determining whether statements are "firmly rooted hearsay exception" or contain "particularized guarantees of trustworthiness" -- no longer governs. See United States v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006), cert. denied, 167 L. Ed. 2d 132 (2007). As the Supreme Court reiterated in Crawford, however, the Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9.

It is well-established that:

> Testimony containing hearsay may be admissible not for its truth but as background information if (1) "the non-hearsay purpose by which the evidence is sought to be justified is relevant," and (2) "the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." Two common scenarios in which the admission of testimony as background evidence may be appropriate are as testimony "helpful in clarifying noncontroversial matter[s] without causing unfair prejudice on significant disputed matters," and as "appropriate rebuttal to initiatives launched by the defendant."

Ryan v. Miller, 303 F.3d 231, 252-53 (2d Cir. 2002) (quoting United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994)).

6

Here, the evidence was admitted to explain how the investigation of the Petitioner progressed and to explain the lapse of time between the commission of the crime and the apprehension of Petitioner. Any prejudice resulting from an implication that Balenzuela had inculpated Petitioner by giving Detective Martinez a photograph of Petitioner was minimal, if at all. The Appellate Division properly found, therefore, that Detective Martinez's testimony did not violate the Confrontation Clause.

### B. The Prosecutor's Comments During Summation

Petitioner next asserts that the prosecutor's comments in summation denied him of his right to due process. To show constitutional error with respect to the prosecution's comments on summation, a petitioner must demonstrate that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Indeed, "[a]n aggrieved party must show more than mere trial error to secure reversal; he must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him." United States v. Newton, 369 F.3d 659, 680 (2d Cir. 2004); see United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."); United States v. Rodriguez, 968 F.2d 130, 142 (2d Cir. 1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required."). In assessing whether a defendant has sustained substantial prejudice, the court is "to consider the severity of the alleged misconduct, any curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct." Newton, 369 F.3d at 680; see United States v. Elias, 285 F.3d

7

183, 190 (2d Cir. 2002).

During summation, defense counsel argued that the man wearing white clothes was, in fact, the shooter. (Tr. at 419-21.) In rebuttal, the prosecutor alleged that the man in white was Balenzuela, and that "when given the opportunity on the night of the incident to identify Eric Balenzuela as the shooter, no witness did." (Id. at 432.) Petitioner construes the prosecutor's statement to mean that the witnesses actually viewed Balenzuela and stated that he was not the shooter. Based upon this interpretation, he claims that these statements were facts that were not in evidence, and were therefore improper. (Pet. Br. at 22.) Clearly, however, the prosecutor's statement could reasonably be interpreted to mean that the witnesses identified Petitioner as the shooter, and stated that the man in white, or Balenzuela, was not the shooter. There was ample evidence at trial to have supported this argument, and it therefore was proper. (See Tr. at 133, 196, 206, 238.) The remainder of the prosecutor's statements were proper argument and, in any event, Petitioner cannot show undue prejudice, particularly in light of the trial court's repeated instructions to the jury that the lawyers' comments did not constitute evidence of guilt. (See id. at 3, 5, 9, 20, 411, 451, 506.)

**C. Imposition of Consecutive Sentences**

Petitioner was sentenced to consecutive terms of imprisonment for Manslaughter in the First Degree and Possession of a Weapon in the Second Degree. Petitioner contends that the imposition of consecutive sentences was "illegal[]," which I construe to mean that it violated the Double Jeopardy Clause and his right to due process. (See Petition ¶9.)

1. Double Jeopardy

In addition to protecting against multiple prosecutions by the same sovereign, the Double Jeopardy Clause "protects against multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). However, "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Id. (citation omitted). In Brown v. Ohio, the Supreme Court observed:

> Because it was designed originally to embody the protection of the common-law pleas of former jeopardy . . . the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define punishments and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

Id. at 165. Thus, in the absence of clear legislative choice to allow multiple punishments for the same offense, the court's imposition of such a sentence runs afoul of the Double Jeopardy Clause. In deciding whether two counts constitute the same offense within the meaning of the Double Jeopardy Clause, the Court considers "whether each count contains an element not contained in the other." United States v. White, 240 F.3d 127 (2d Cir. 2001); see also Blockburger v. United States, 284 U.S. 299 (1932).

New York Penal Law Section 125.20(1) provides that "[a] person is guilty of manslaughter in the first degree when . . . with intent to cause serious physical injury to another person, he causes the death of such person or of a third person." The elements of criminal

possession of a weapon in the second degree are: (1) possession of a firearm; (2) that is loaded and operable; and 3) with intent to use it unlawfully against another. Aparicio, 269 F.3d at 97; N.Y. Penal Law § 265.03(2).

Since weapons possession does not require that the defendant caused the death of another person, see N.Y. Penal Law § 265.03(2), and second degree manslaughter does not require possession of a gun, see N.Y. Penal Law § 125.25(1), each offense "requires proof of a fact that the other does not." Blockburger, 284 U.S. at 304. Accordingly, the Double Jeopardy Clause is not violated by imposing one term of imprisonment for manslaughter consecutively with another term of imprisonment for second-degree weapon possession.

### 2. Due Process

Nor was Petitioner's right to due process violated by the imposition of consecutive sentences. According to New York law, "once the unlawful possession of the weapon is established, the possessory crime is complete and any unlawful use of the weapon is punishable as a separate crime." People v. Pons, 68 N.Y.2d 264, 266 (1986); People v. Almodovar, 62 N.Y.2d 126, 130, (1984); People v. Bellamy, 247 A.D.2d 627 (2d Dept. 1998); People v. Mitchell, 216 A.D.2d 863 (4th Dept. 1995). Petitioner's unlawful possession of the gun was completed at the time that he displayed the weapon while walking down the street. His subsequent use of the weapon to shoot and kill Coll was properly considered to be a separate crime for the purposes of sentencing. Imposition of consecutive sentences was therefore proper under New York law, and Petitioner's right to due process was in no way violated.

### III. Conclusion

For the reasons set forth above, Buenos Ruiz's petition is hereby DENIED. A certificate

of appealability shall not issue. The Clerk of the Court is directed to close this case, and to mail a copy of this decision to the petitioner.

SO ORDERED.

Dated: May 10, 2007        /s/ Nicholas G. Garaufis
     Brooklyn, NY        Nicholas G. Garaufis
                                United States District Judge